# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

**AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC**

| | |
|---|---|
| ERINYS IRAQ LTD.,<br>Baghdad Int'l Airport, Free Trade Zone<br>Baghdad, Iraq<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | No. 07-340C<br><br>Judge C. Miller |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

## NATURE OF THE CASE

1. Erinys Iraq Ltd. ("Erinys") brings this action because the Joint Contracting Command-Iraq/Afghanistan ("JCC-I/A" or "the Agency") improperly excluded Erinys from the competitive range for award of the Reconstruction Security Support Services Contract ("RSSS") under Request for Proposals No. W91GXZ-07-R-0004 (the "RFP").

2. Furthermore, the JCC-I/A has stated its intent to award the RSSS contract to another offeror on Saturday, June 2, 2007. See Exhibit 1 to

The Memorandum in Support of Erinys's Motion for TRO and/or Preliminary Injunction.

3. The exclusion of Erinys from the competitive range and the award of the RSSS contract to another offeror are violations of United States ("U.S.") laws and regulations, Iraqi laws and regulations, and the RFP requirements, with significant potential harm to U.S. policy and goodwill in Iraq.

**JURISDICTION**

4. This is a protest action by an interested party "objecting . . . to a proposed award or the award of a contract" and alleging a "violation of statute or regulation in connection with a procurement or proposed procurement" by a federal agency. This Court has jurisdiction over this protest pursuant to 28 U.S.C. §§ 1491(a) and (b) (2000).

**PARTIES**

5. The Plaintiff, Erinys, is a limited company incorporated under [redacted], with headquarters in Baghdad, Iraq. If the requested relief is granted, Erinys would be in the competitive range for award of the contract. Erinys, therefore, has standing to pursue this action.

6. The Defendant, the United States of America, has acted through the Joint Contracting Command-Iraq/Afghanistan, F&T Sector, Baghdad,

Iraq, APO AE 09348. Army Lieutenant Colonel Mark I. Wade is the Contracting Officer responsible for the procurement. He recently replaced Ms. JoAnn M. Townley, who previously served as the Contracting Officer.

## PROCEDURAL HISTORY

7. On April 9, 2007, Erinys filed a bid protest concerning the same RFP at the U.S. Government Accountability Office ("GAO"). The GAO assigned number B-299524.2 to Erinys's GAO bid protest.

8. On May 21, 2007, the Agency filed an Agency Report with the GAO for B-299524.2. Pursuant to GAO rules, Erinys was required to submit Comments to the Agency Report and any supplemental bid protest grounds no later than 5:30 p.m. on May 31, 2007.

9. On May 29, 2007, the Agency notified Erinys than the RFP is also concurrently being challenged by Brian X. Scott at the Court of Federal Claims ("COFC") under case number 1:07-cv-00216-CCM.

10. On the afternoon of May 30, 2007, the GAO conducted a conference call to inform Erinys and the Army that it may be inclined to dismiss B-299524.2 under rule 21.11(b) of its bid protest regulations (4 C.F.R. § 21.11(b)), because, "the matter involved is the subject of litigation before . . . a court of competent jurisdiction."

11. During that same conference call on May 30, 2007, the undersigned asked the Agency counsel, Major Christopher Krafchek, how

close the Agency was to making award of the contract, because once the GAO dismissal occurred, the automatic stay of contract award would be lifted, so the undersigned needed to understand whether there were exigent circumstances relating to the timing of the dismissal. Major Krafcheck affirmatively stated that the Agency had not proceeded very far with the evaluation, because of the automatic stay at GAO, so they were not close to awarding the contract if the GAO protest was dismissed. Based on that answer, the undersigned informed the GAO that, if the GAO was inclined to dismiss the protest in deference to the Court, the dismissal should occur as soon as possible to avoid the May 31st 5:30 p.m. deadline for filing supplemental protests. The GAO agreed.

12. At 10:30 a.m. on May 31, 2007, the GAO informed Erinys and the Army that it had decided to dismiss the GAO bid protest for the reasons stated above. GAO formally dismissed Erinys's protest at GAO at approximately 12:30 p.m. that same day.

13. Approximately one hour after the GAO's dismissal of Erinys's protest, Major Krafchek's superior, Mr. Ray Saunders, informed Erinys that, notwithstanding Major Krafchek's statements to the contrary, the Agency intended to make award of the RSSS Contract on Saturday, June 2. The award will occur in Iraq, which is 8 hours ahead of Eastern Standard Time.

## STATEMENT OF THE CASE

### The RFP

14. Erinys is submitting the Agency Report that was filed with the GAO on May 21, 2007. The citations to the Agency Report, contained throughout this document, are to the documents contained in that Agency Report ("AR").

15. On January 19, 2007, JCC-I/A issued the RFP under Federal Acquisition Regulations ("FAR") Part 15 for security services supporting operations and projects by the Gulf Region Division of the U.S. Army Corps of Engineers ("GRD") throughout Iraq. Pursuant to the RFP, the Government is to award one (1) indefinite delivery/indefinite quantity ("ID/IQ") type contract. AR Tab 6 (RFP), § B.1, at 6. The minimum guaranteed amount under this contract is $3,000,000 with a maximum amount not to exceed $475,000,000 for the base and option periods. The Contracting Officer will execute and issue Task Orders using the prices to be negotiated in Tables B.1 and B.2 of the RFP.

16. The RFP's Performance Work Statement ("PWS") requires a range of security-related services, including the use of armed guards. AR Tab 10 (RFP PWS § 1.0 (Rev. 2), at 6).

17. Section M.11 of the RFP states that Award will be made to the offeror whose proposal represents the best value to the Government. AR Tab 6 (RFP), § M.1, at 35.

18. Section M.4, "Factors To Be Evaluated," sets forth the following evaluation Factors and Subfactors to be evaluated by the Source Selection Evaluation Board ("SSEB"):

> TECHNICAL FACTORS
> Factor 1 Management Approach
> Factor 2 Technical Approach
> Factor 3 Past Experience
> Factor 4 Past Performance
> Factor 5 Socioeconomic
> PRICE

AR Tab 6 (RFP), § 4.1, at 36.

**Erinys's Proposal**

19. Erinys is one of two incumbent contractors currently performing a portion of the same services that the RSSS Contract will replace.

20. On March 3, 2007, Erinys submitted a proposal to compete for the RSSS Contract under the subject RFP (hereinafter "Erinys Proposal").

21. The Proposal states that: "For more than three years, Erinys has been the prime security provider for the Gulf Region Division, Iraq. . . . Erinys's extensive experience in infrastructure security has had a direct impact on the success of GRD reconstruction missions throughout Iraq." AR Tab 19, § III.1 at Introduction

22. Erinys's Proposal also contains the following quote from former GRD Commander Major General Ronald Johnson: "I am proud of the superior Executive Close Protection that Erinys has provided. They have saved my life on numerous occasions." See id. § IV.1 Introduction.

## Notice of Award and Debriefing

23. On April 2, 2007, JCC-I/A sent a letter to Erinys stating that Erinys had been excluded from the competitive range and thereby eliminated from the competition. On April 3, 2007, Erinys requested a pre-award debriefing pursuant to FAR 15.505. On April 5, 2007, the CO provided a written debriefing to Erinys. AR Tab 17 (Erinys Debrief).

[redacted]

[redacted]

## The Agency's Treatment of the RFP's

## Requirement for Iraqi Licenses Was Fundamentally Flawed

26. The RFP contains specific requirements related to the licensing of contractors in Iraq.

27. RFP Section L.4.2.3, as amended, provides:

> Address Certifications by presenting: (1) contractor and its subcontractors at any tier must include a copy of a business license from the Iraq Ministry of Trade, with its proposal submission; and (2) contractor and its subcontractors at any tier must include a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior. If no license from the Kurdistan Regional Governate Ministry of Interior, you may provide signed copy of license application to the Kurdistan Regional Governate Ministry of Interior.

AR Tab 8 (RFP Amd. 1), at 8 (first page 8).

28. RFP Section M.4.1, Subfactor 1(c), as amended, provides:

> Address Certifications by presenting: (1) contractor and its subcontractors at any tier must include a copy of a business license from the Iraq Ministry of Trade, with its proposal submission; and (2) contractor and its subcontractors at any tier must include a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior. If no license from the Kurdistan Regional Governate Ministry of Interior, you may provide signed copy of license application to the Kurdistan Regional Governate Ministry of Interior.

AR Tab 8 (AR Amd. 2), at 10.

29. This licensing requirement was the subject of several questions by prospective offerors. See AR Tab 9 (1st Round Q&A), at No. 18; AR Tab. 11 (2nd Round Q&A), at Nos. 22, 44-46, 55, 58.

30. Some prospective offerors asked whether the Iraqi licenses could be submitted at the time of contract award or afterward, because obtaining the licenses was slow due to the "dysfunctional" Iraqi bureaucracy. See AR Tab 11 (2nd Round Q&A), Nos. 44, 45, 55. The Agency unequivocally stated that all prospective offerors must provide all required Iraqi licenses as part of their proposals, and that providing the licenses at the time of contract award or thereafter would be unacceptable. Id. at Nos. 44, 45.

31. Several questions related to the circumstances under which Iraqi licenses would be required for subcontractors, *e.g.*, whether Iraqi licenses were required for subcontractors that were not providing security services. See AR Tab 9 (1st Round Q&A), No. 18; AR Tab 11 (2nd Round Q&A), Nos. 22, 46). The Agency refused to respond with any substantive guidance. Instead, the Agency advised "Contractors and subcontractors must comply with all applicable laws of the jurisdiction in which they will perform work. If the contractor requires information about local laws, it is strongly recommended that they consult appropriate counsel." AR Tab 11 (2nd Round Q&A), at No. 46.

32. [redacted] Furthermore, the Agency Report contains no evidence that the Agency gave any serious consideration to whether the prospective offerors were in compliance with Iraqi licensing laws. The Agency did not enforce this requirement, but it also did not notify the offerors that it was relaxing the requirement.

33. A recent *Washington Post* article shows that this licensing issue has significant potential harm to U.S. Policy and goodwill in Iraq. In U.S. Security Contractors Open Fire in Baghdad," *Wash. Post,* at A01 (May 27, 2007), the story describes how employees of a private security firm under contract to the State Department "opened fire" on the streets of Baghdad twice in one week. It also notes that the security firm at issue had "not applied to operate as a private security company in Iraq." A senior American military adviser to the Iraqi Interior Ministry's intelligence directorate described the ministry as "a powder keg" that "could undermine a lot of the cordial relationships that have been built up over the past four years."

34. The U.S. Government should not be allowed to award the largest U.S. security contract to a team that is not fully compliant with Iraqi licensing requirements.

**<u>The Past Performance Evaluation was Arbitrary, Irrational, and Inconsistent with the RFP, and It Afforded Unequal Treatment</u>**

35. The RFP stated that offers would be evaluated based upon the past performance of the prime contractors and the significant subcontractors, defined as any subcontractor a subcontract of $550,000 or more. AR Tab 6 (RFP), at 39; AR Tab 8 (RFP Amd. 1), at 11-12; AR Tab 10 (RFP Amd. 2), at 7 (first page 7 unnumbered).

36. The Agency Report shows that the Agency assigned a Past Performance rating of [redacted]. AR Tab 16 (Competitive Range Determination).

[redacted]

39. Additionally, the Agency rated Erinys an [redacted] for Past Performance factor despite the fact that [redacted]

[redacted]. AR Tab 2 (Contracting Officer's Statement), at 3 (pages unnumbered).

40. [redacted].

## <u>The Source Selection Authority Failed To Compare Proposed Prices on an "Apples To Apples" Basis</u>

41. Section B of the RFP contains the Schedule of Supplies and Services and Prices/Costs. They are lists of labor categories necessary to perform the services required in the RFP's Performance Work Statement. Tab 6 (RFP), at 3-4 (some pages unnumbered).

42. The RFP required prospective offerors to fill in unit prices for each labor category <u>and</u> estimated quantities for each labor category. <u>See</u> <u>id</u>.

43. The Agency Report states that [redacted] submitted a total evaluated price of [redacted] submitted a total evaluated price of [redacted] and [redacted] submitted a total evaluated price of [redacted]. AR Tab 16 (Competitive Range Determination).

[redacted]

[redacted]

45. Each offeror's total proposed price was based on three factors: its CLIN pricing, its <u>estimate</u> of the Government's <u>potential</u> requirements for each CLIN, and its proposed incentives. [redacted]

[redacted]

**<u>The Agency Failed to Conduct the Required Price Realism Analysis</u>**

47. The RFP stated that proposals would be evaluated for realism, reasonableness and completeness. AR Tab 6 (RFP) § M.4.1, at 40. The RFP

set out the separate descriptions for the three different tests on completeness, reasonableness and realism. It described the "Realism" evaluation as follows:

> Proposed prices will be evaluated to determine if the prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the unique methods of performance and materials described in the offeror's proposal. If an Offeror's price is evaluated as unrealistically low or high compared to the anticipated price of performance and/or the offeror fails to recognize and/or mitigate management, technical, schedule, and price risks, the Government will reflect the inherent findings, risks, and associated price impacts in the Price Realism Analysis as well as in the appropriate Factor within the Technical proposal.

Id.

[redacted]

[redacted]

[redacted]

[redacted]

51. The Agency asserts that Erinys' proposal was excluded from the competitive range because [redacted]. AR Tab 2 (Contracting Officer's Statement), at last page. However, the Record is utterly devoid of any analysis or evaluation to support it. Without any analysis – meaningful or otherwise – the Agency simply *assumed* that [redacted].

**The Agency Rated [redacted] on the Management and Technical Approach Factors Based on Dramatically Higher Staffing Levels Than Were in [redacted] Price Proposal**

52. The Agency rated [redacted] for both the management and technical factors. Id. However, the record demonstrates that [redacted].

53. Tab 23 of the Agency Report contains spreadsheets comparing the FTE staffing for each offeror's technical proposals and price proposals. In [redacted]

54. The Agency never resolved this major discrepancy in [redacted] proposal, and instead credited [redacted] for offering full staffing in the technical evaluation while evaluating [redacted] proposed price based upon totally different – and reduced – staffing.

**The RFP Contained a Latent Ambiguity as to the Level of Expertise of the Staffing Sought by the Agency**

55. The Agency is seeking a contractor to protect the lives of Government officials in Iraq. The RFP states that "where the consequences of failure are loss of life due to unsafe acts or inaccurate threat assessments .

. . the standard of performance cannot be less than 100%; in effect a zero tolerance for failure to meet the standard." AR Tab 6 (RFP) § H.10 at page 19.

56. Recognizing the extremely high standard of performance required, Erinys proposed staff with "gold standard" qualifications. For example, [redacted]." AR Tab 19 (Erinys Proposal), at II-35. [redacted] Id. at II-54.

57. The RFP, moreover, indicated that the Government required higher-quality personnel at a higher price. The RFP stated a maximum value for the base and all option years to be $475,000,000. AR Tab 6 (RFP), at 6. Section M of the RFP likewise stated that "[a]ll technical factors combined are significantly more important than price." AR Tab 6 (RFP), at 35.

58. Erinys's prices [redacted]

[redacted]

[redacted] While the proposals of [redacted]

[redacted]

**<u>The Agency Rated [redacted] on the Management and Technical Approach Factors Despite Not Understanding of [redacted] Teaming Arrangement</u>**

61. The Agency rated [redacted] under the Management and Technical Approach factors. AR Tab 16 (Competitive Range Determination).

62. However, the record shows that the Agency had not basis to understand the [redacted]. The Competitive Range Determination document states that [redacted] and lists the flaw as a weakness. AR Tab 16 (Competitive Range Determination),

at 5. The SSEB noted the same flaw, but listed it as a deficiency. AR Tab 15 (SSEB Report), at 7.

**The Agency Rated [redacted] Technical Approach [redacted] Despite Significant Known Risks**

63. The Agency rated [redacted] for the Management and Technical Approach factors. AR Tab 16 (Competitive Range Determination).

64. [redacted] proposal contained a significant assumption in its [redacted]. AR Tab 15 (SSEB Report), at 8. Moreover, [redacted]. Id.

65. The Agency noted [redacted] assumption in the Competitive Range Determination, but there is no evidence that the Agency considered the risks associated with this assumption.

**The Agency Overlooked the Technical Merits of Erinys's Proposal**

[redacted]

[redacted]

67. Most of these elements were not discussed in either the SSEB Consensus report or the Competitive Range Determination.

68. Significantly, in its Legal Memorandum, the Agency does not address these elements separately but merely asserts, in conclusory fashion, that the SSEB consensus report notes "[redacted]" of the proposal elements at issue – then lists proposal elements discussed by the SSEB Report without addressing what was *not* discussed. AR Tab 1 (Legal Memorandum), at 28.

69. The Contracting Officer's statement is even more conclusory, stating simply that [redacted]" AR Tab 2 (Contracting Officer's Statement), second page.

**<u>Erinys's [redacted] Rating for the Management Approach Factor Was Irrational.</u>**

70. The RFP imposes no requirement for the number of key persons and leaves it up to offerors. AR Tab 6 (RFP) § H.6 at 18. However, the record demonstrates that the Agency downgraded Erinys's proposal because [redacted] AR Tab 16 (Competitive Range Determination), at 17.

[redacted] The RFP did not require offerors to list the number of years of experience of the Project Director. The RFP simply required offerors to

provide resumes that "highlight each individual's experience." AR Tab 6 (RFP) § M.4 at 38. Erinys supplied a compliant resume describing [redacted] experience for the [redacted]. AR Tab 19 (Erinys Proposal), Tech. Prop. at A-1. Nevertheless, the Agency downgraded Erinys for failing to list [redacted]

**<u>The Past Experience Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors</u>**

72. Section L.6 of the RFP, as amended, required offerors to provide past experience information for themselves and their significant subcontractors. Section M.4.1, Factor 3, states that this will be a mandatory evaluation criteria. AR Tab 10 (RFP Amd. 2), at 6 (paged unnumbered).

73. The SSEB Report and the Competitive Range Determination indicate that every offeror submitted the required Past Experience information for its significant subcontractors – [redacted]

74. Indeed, the Agency rated [redacted] a [redacted] for this Factor despite [redacted] obvious failure to comply with the mandatory RFP criteria.

**The Socioeconomic Evaluation Were Not In Compliance with the RFP and Afforded Unequal Treatment To Offerors.**

75. The RFP contained specific evaluation criteria for the Socioeconomic Factor. AR Tab 6 (RFP), at 39-40.

76. The record shows that the Agency failed to follow these criteria in its evaluations of [redacted].

77. [redacted] were improperly given credit for the [redacted], although this was not an RFP evaluation factor. AR Tab 16 (Competitive Range Determination) at 4, 8.

78. The Agency also gave credit to [redacted] for the [redacted] this was not an RFP evaluation factor. Id.

[redacted]

**The Agency Improperly Eliminated Erinys From the Competitive Range Based on Informational Deficiencies That Should Have Been Addressed through Clarifications and Communications**

80. The record shows that the Agency improperly eliminated Erinys from the competitive range based largely upon informational deficiencies that should have been addressed through allowed exchanges with Erinys.

81. Nearly all of the weaknesses or other proposal flaws that the Agency used to downgrade Erinys in the nonprice evaluations were the result of informational deficiencies, rather than substantive flaws in its proposal.

82. As an example, the Agency criticized Erinys [redacted] although no requirement to submit [redacted] appears in the solicitation, and [redacted]. AR Tab 1 (Legal Memorandum), at 33.

83. Additionally, Erinys was downgraded on the Past Performance factor evaluation because the Agency assumed Erinys [redacted] Id. at 19.

84. The Agency should have conducted communications pursuant to FAR § 15.306 rather than exclude offerors from participating in the procurement on the basis of informational issues that could easily be addressed.

85. In sum, the nonprice evaluations should never have turned on such informational issues that are so readily corrected.

## CLAIMS FOR RELIEF

### Count I – The Agency's Relaxation of the RFP Licensing Requirement Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law

86. Erinys herein repeats and realleges 1-85 as fully stated herein.

87. The RFP required offerors to submit with its proposal submission, for the contractor and its subcontractors at any tier, a copy of a business license from the Iraq Ministry of Trade and a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior.

88. This RFP requirement was mandatory to ensure compliance with Iraqi law.

[redacted]

90. The Agency failed to notify the offerors that it was [redacted].

91. These actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

92. The Agency treated Erinys unequally by assigning it a [redacted] for not complying with this requirement, while not penalizing other offerors on the same point.

**Count II – The Agency's Past Performance Evaluation Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law**

93. Erinys herein repeats and realleges 1-85 as fully stated herein.

94. The RFP stated that offers would be evaluated based upon the past performance of the prime contractors and the significant subcontractors, defined as any subcontractor or a subcontract of $550,000 or more.

95. The Agency assigned a Past Performance rating of [redacted] solely because of informational deficiencies and/or the *Agency's* inability to contact references – not for poor past performance.

96. When JCC-I/A had difficulty reaching references for nearly all of the offerors, it simply gave up instead of undertaking the "clarifications" process permitted under FAR § 15.306.

97. These actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

98. The Agency treated the prospective offerors unequally by assigning [redacted] past performance, but there is no evidence that that [redacted] provided any past performance information for its subcontractors – a mandatory solicitation requirement.

**<u>Count III – The Agency's Basis for Comparing Price Proposals Was Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law</u>**

99. Erinys herein repeats and realleges 1-85 as fully stated herein.

100. The Agency Report states that Erinys was eliminated from the competitive range [redacted].

101. The Source Selection Authority based his/her decision on a price evaluation determination that [redacted]

102. The Agency's price comparison was arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

**<u>Count IV – The Agency's Failure to Conduct a Meaningful Price Realism Analysis Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law</u>**

103. Erinys herein repeats and realleges 1-85 as fully stated herein.

104. The RFP stated that proposals would be evaluated for realism, *i.e.*, whether the proposed prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the

unique methods of performance and materials described in the offeror's proposal.

105. The Agency Report failed to [redacted]

106. The Agency's failure to conduct a meaningful price realism analysis was arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count V – The Agency's High Rating of [redacted] Management and Technical Approach, Despite the Higher Staffing Levels Than Were in [redacted] Price Proposal, Was Arbitrary, Capricious, and Irrational**

107. Erinys herein repeats and realleges 1-85 as fully stated herein.

108. The Agency rated [redacted] for both the management and technical factors, despite the fact that [redacted] proposed staffing in its technical proposal was dramatically higher than the staffing in its price proposal.

109. The Agency's actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count VI – The Agency Misevaluated the Proposals Because of a Latent Ambiguity in the RFP**

110. Erinys herein repeats and realleges 1-85 as fully stated herein.

111. The RFP informed prospective contractors of the importance of the life-saving services required for the RSSS Contract and the extremely

high standard of performance, and therefore the need for higher-quality personnel at a higher price.

112. The Agency, however, excluded Erinys from the competitive range [redacted], disregarding the higher quality aspects of its proposal.

113. The Agency accepted low-priced proposals into the competitive range without analyzing the quality of the service providers.

114. [redacted] strongly suggests that the offerors were not proposing on a common basis due to a latent defect in the RFP.

115. The Agency's failure to evaluate the differing levels of service quality, due to a latent ambiguity in the RFP, was arbitrary and irrational , in violation of 5 U.S.C. § 706(2)(A) (2000).

## Count VII – The Agency's High Ratings of [redacted] Management and Technical Approach Factors Were Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law

116. Erinys herein repeats and realleges 1-85 as fully stated herein.

117. The Agency rated [redacted] under the Management and Technical Approach factors, but the record shows that the Agency never understood the [redacted].

118. By assigning such the highest possible rating for these evaluation factors without [redacted] vital to

contract performance, the Agency acted arbitrary and capriciously, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count VIII – The Agency's Assignment of a [redacted] Evaluation Rating to [redacted] Technical Proposal, Despite Significant Known Risks, Was Arbitrary, Capricious, and Irrational**

119. Erinys herein repeats and realleges 1-85 as fully stated herein.

120. The Agency rated [redacted] for the Management and Technical Approach factors despite the highly risky assumption [redacted].

121. These actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count IX – The Agency Arbitrarily and Capriciously Overlooked the Technical Merits of Erinys's Proposal**

122. Erinys herein repeats and realleges 1-85 as fully stated herein.

123. The record shows that the Agency overlooked many significant strengths of Erinys's proposal.

124. These actions were arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count X – The Agency's [redacted] Rating for Erinys's Management Approach Factor Was Arbitrary, Capricious, and Irrational**

125. Erinys herein repeats and realleges 1-85 as fully stated herein.

126. The Agency downgraded Erinys for the Management Approach Factor based on undisclosed evaluation criteria and other issues not addressed in the RFP.

127. These actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count XI – The Agency's Past Experience Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors**

128. Erinys herein repeats and realleges 1-85 as fully stated herein.

129. The RFP required offerors to provide past experience information for themselves and their significant subcontractors.

130. The Agency did not [redacted] Indeed, the Agency rated [redacted] for this Factor despite [redacted] obvious failure to comply with the mandatory RFP criteria.

131. These actions were arbitrary and in violation of the RFP, in violation of 5 U.S.C. § 706(2)(A) (2000).

132. The Agency treated the prospective offerors unequally by enforcing the [redacted].

**Count XII – The Socieconomic Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors**

133. Erinys herein repeats and realleges 1-85 as fully stated herein.

134. The RFP contained specific evaluation criteria for the Socioeconomic Factor.

135. [redacted] were improperly given credit for factors that were not included in the RFP, and apparently was not held to the standards that were contained in the RFP.

136. These actions were arbitrary and in violation of the RFP, in violation of 5 U.S.C. § 706(2)(A) (2000).

137. The Agency treated the prospective offerors unequally by [redacted].

**Count XIII – The Agency Improperly Eliminated Erinys From the Competitive Range Based on Informational Deficiencies That Should Have Been Addressed through Clarifications and Communications**

138. Erinys herein repeats and realleges 1-85 as fully stated herein.

139. The Agency eliminated Erinys from the competitive range based largely upon informational deficiencies that should have been addressed through exchanges with Erinys.

140. Nearly all of the weaknesses or other proposal flaws that the Agency used to downgrade Erinys in the nonprice evaluations were the result of informational deficiencies, rather than substantive flaws in its proposal.

141. The Agency should have conducted communications pursuant to FAR § 15.306 rather than exclude offerors from participating in the procurement on the basis of informational issues that could easily be addressed.

142. By failing to do so, the Agency acted arbitrarily, capriciously, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A) (2000).

WHEREFORE, Erinys requests that it be granted the relief requested in its Requests for Relief.

## REQUESTS FOR RELIEF

Erinys respectfully requests this Court to enter judgment in Erinys's favor and against Defendant, and to provide the following relief:

1. a declaratory judgment that the Agency's elimination of Erinys from the competitive range was contrary to law, arbitrary, capricious, unreasonable, and of no force or effect;

2. an order directing the Agency to reinstate Erinys to the competitive range, to conduct meaningful discussions with Erinys, to solicit another round of offers, and to evaluate revised offers fairly and equally;

3. an order awarding Erinys its bid preparation and proposal costs in an amount to be proven;

4. an order awarding Erinys its costs of pursuing this action, including attorneys' fees, and expenses; and

5. such other relief as the Court may deem just and appropriate.

Respectfully submitted,

s/ Robert S. Nichols

Robert S. Nichols, Esq.
(Counsel of Record)
Elizabeth W. Newsom, Esq.
Angela B. Styles, Esq.
Charlotte Gillingham, Esq.
Dane Swanson, Esq.
(Of Counsel)

CROWELL & MORING LLP
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2541
Fax: (202) 628-5116
Protected Fax: (202) 508-8989

Attorneys for Plaintiff
Erinys Iraq Ltd.

June 1, 2007